IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

- - -

UNITED STATES OF AMERICA    : CRIMINAL NO. 09-797-1
                                 :
                                 :
                                 :
                                 :
                 v               :
                                 :
                                 :

ROBERT J. THOMPSON,       : Philadelphia, Pennsylvania
                                 : February 8, 2010
             Defendant : 2:07 p.m.

- - -

TRANSCRIPT OF GUILTY PLEA HEARING
BEFORE THE HONORABLE CYNTHIA M. RUFE
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Government:    TERRI A. MARINARI, ESQUIRE
                         Assistant United States Attorney
                         United States Attorney's Office
                         615 Chestnut Street
                         Suite 1250
                         Philadelphia, PA   19106

For the Defendant:    MARC NEFF, ESQUIRE
                         Law Offices Marc Neff
                         1818 Market Street
                         Thirteenth Floor
                         Philadelphia, PA   19103

*Transcribers Limited*
17 Rickland Drive
Sewell, NJ 08080
856-589-6100 · 856-589-9005

2

1   Audio Operator:      L. Kashner Wittje

2   Transcribed By:      Jeff Nathanson

3                            - - -

4        Proceedings recorded by For The Record;

5   transcript produced by computer-aided transcription
    service.

6                            - - -

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          (The following was heard in open court at

2    2:07 p.m.)

3          THE COURT:  Good afternoon, everyone.

4          ALL:  Good afternoon, Your Honor.

5          THE COURT:  Please be seated.  Are we ready

6    to proceed with the plea to the information for Robert

7    J. Thompson?

8          MR. NEFF:  We are, Your Honor.

9          MS. MARINARI:  Yes, Your Honor.

10         THE COURT:  All right.  Thank you, Counsel.

11   He will need to be arraigned as well, so we will have

12   Mr. Thompson rise to be sworn in, please.

13         ROBERT J. THOMPSON, Defendant, Sworn.

14         COURTROOM DEPUTY:  Please state your full

15   name for the record.

16         THE DEFENDANT:  Robert J. Thompson.

17         COURTROOM DEPUTY:  Thank you.

18         THE DEFENDANT:  Robert John Thompson.

19         COURTROOM DEPUTY:  Thank you.

20         THE COURT:  Good afternoon, Mr. Johnson.

21         THE DEFENDANT:  Thompson.

22         THE COURT:  Thompson, excuse me.  It's Robert

23   John Thompson, is what you just said?

24         THE DEFENDANT:  Correct.

25         THE COURT:  I thought so.  You just threw me

4

a bit.

THE DEFENDANT:  It's all right.

THE COURT:  Would you please be seated?  I can conduct my colloquy, that is, my questions and your answers, as you are seated at counsel table next to your attorney.

We would like to ask you a number of questions.  We want to ask you, first, have you received a copy of the information that charges you with one count of possession of child pornography?

THE DEFENDANT:  Yes, I have, Your Honor.

THE COURT:  Did you read it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  We are going to be talking in detail about this charge, its definition, your possible maximum penalties and many other matters relating to your rights, and you will know them as we go along.

So I am going to combine your formal arraignment on this information with your guilty plea colloquy.  But I do want you to understand that you have a right to be represented by counsel and, of course, you have counsel, he is seated right next to you.

THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  And, of course, you have retained

2     your counsel, right?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  Okay.  But you also have a right

5     to understand that from the beginning of any

6     prosecution, the beginning of any charges against you,

7     you are entitled to counsel free of charge if you so

8     qualify, and that counsel would be appointed by the

9     Court from a list maintained by the Court called the

10    Criminal Justice Panel.  Aren't you, Mr. Neff, on that

11    panel?

12          MR. NEFF:  I am on the panel, Your Honor,

13    yes.

14          THE COURT:  Yes.  But you are here on a

15    private retention basis?

16          MR. NEFF:  That is correct.

17          THE COURT:  But in that case, if you so

18    qualified, at any time in that prosecution if you felt

19    the need to ask the Court for court appointed counsel,

20    we would certainly consider that, given some

21    information about your needs and your ability to pay,

22    do you understand that?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  Okay.  And the rest, I think,

25    we'll cover as we go along.  And if we do not, counsel

6

will help the Court.  But I think that it is
duplicative to arraign and then just have a plea.

So let's begin.  First of all, I am going to
ask you questions to determine whether or not you are
competent and capable of entering an informed plea to
the charge in this information.

Secondly, it is my purpose today to determine
and make a finding of fact as to whether or not you are
giving up your rights to a trial in this matter
voluntarily, knowingly and intelligently.

And, therefore, to enable me to have the
information I need to make my decisions, I must ask you
questions, and your responses must be truthful.  They
must be accurate.  That is what we call credibility.

If they are not truthful and accurate, if I
can't act on your information, then I cannot do my job
properly, and that means that if I suspected that you
were intentionally or deliberately being untruthful or
evasive, I might not accept your plea.  Do you
understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If I don't accept your plea, you
have a few options.  One of those options is not to go
to another judge.  So you would have to decide whether
or not there would be some way you could resurrect an

1  agreement with the government and perhaps, ask me to

2  reconsider.  That is one option.

3       Number two, you have an option to have your

4  case, if I do not accept this plea, taken by the

5  prosecutor's office and submitted to a grand jury so

6  you would be indicted.

7       Under our new court rule, that case would

8  still come back to me.  And you could also, after that

9  indictment, be listed for trial, and you would not lose

10 any trial rights.  It's simply that I would not accept

11 the plea, and you would lose any benefits of a plea

12 that you currently have, do you understand that?

13      THE DEFENDANT:  Yes, Your Honor.

14      THE COURT:  All right.  There is another

15 consequence, too, and that is if the government also

16 felt that you were being untruthful or evasive, they

17 may withdraw any plea agreement that they have with

18 you, and you would lose those benefits.

19      Additionally, the government could decide to

20 charge you with crimes, such as false swearing or

21 perjury, and those crimes are separate from the one you

22 face in this information, and they have separate and

23 additional penalties to the ones that you currently

24 face.  Do you understand that?

25      THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  Now, how old are you, sir?

2    THE DEFENDANT:  Fifty-four, Your Honor.

3    THE COURT:  And how far have you gone in

4    school?

5    THE DEFENDANT:  I've got a professional

6    degree.  I am a physician.

7    THE COURT:  Okay.  So with that level of

8    education, you certainly know how to read, write and

9    understand the English language, correct?

10    THE DEFENDANT:  Yes, Your Honor.

11    THE COURT:  All right.  Are you practicing

12    medicine now?

13    THE DEFENDANT:  Not at this point, Your

14    Honor.

15    THE COURT:  When is the last time you

16    practiced?

17    THE DEFENDANT:  October of 2008.

18    THE COURT:  And what are you currently doing

19    for employment?

20    THE DEFENDANT:  I am not currently employed,

21    Your Honor.

22    THE COURT:  What kind of physician were you?

23    THE DEFENDANT:  I was a dermatologist.

24    THE COURT:  And how long were you engaged in

25    that profession?

9

THE DEFENDANT:  Counting my residency, it would have been twenty-six years.

THE COURT:  Now, have you taken any drugs, any medicine or any pills in the last twenty-four hours?

THE DEFENDANT:  Yes, ma'am.  I have taken a sleeping pill last night and an antidepressant last night that is prescribed by my physician.

THE COURT:  Do you always take your dosages at night?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you have any effect from the sleeping pill and antidepressant when you take them separately or together that impairs your ability to perceive or understand what you are doing?

THE DEFENDANT:  Not that I believe, Your Honor, no.

THE COURT:  What about your comprehension?  Does it affect your comprehension in any way?

THE DEFENDANT:  No, Your Honor.  Only immediately after I take the sleeping pill, I sometimes have amnesia for what I read or what sort of music I listened to after I take my sleeping pill, but the next day there is no affect.

THE COURT:  What is the medication, sir?

10

THE DEFENDANT:  Ambien.

THE COURT:  Ambien for the sleeping pill?

THE DEFENDANT:  Yes.

THE COURT:  And the antidepressant?

THE DEFENDANT:  Is Celexa.

THE COURT:  And you are treated by a psychiatrist or a psychologist?

THE DEFENDANT:  Yes, Your Honor, a psychiatrist.

THE COURT:  And how long have you been so treated?

THE DEFENDANT:  Since September I believe it was of 2008.

THE COURT:  Were you ever treated for a mental illness or a chemical addiction prior --

THE DEFENDANT:  No, Your Honor.

THE COURT:  -- to that date?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And were you hospitalized at all?

THE DEFENDANT:  Prior to that date, Your Honor?

THE COURT:  Prior to or after?

THE DEFENDANT:  Prior to that date, I was not hospitalized.  In October of 2008, I was in an inpatient treatment facility for sexual addiction.

11

1          THE COURT:  And where was that?

2          THE DEFENDANT:  In Chester, Pennsylvania,

3   Keystone.

4          THE COURT:  Okay.  How long were you there?

5          THE DEFENDANT:  Six weeks, Your Honor.

6          THE COURT:  And do you continue on an

7   outpatient basis?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Is that separate from your

10  psychiatrist?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  And you have a doctor or you

13  attend group?

14         THE DEFENDANT:  Well, actually on Mondays, I

15  come down to Philadelphia, I have an individual therapy

16  session, then a forty-five minute long educational

17  session with other sexual addicts, and then I have a

18  group session after that for an hour and a half.

19         THE COURT:  So group and individual

20  outpatient?

21         THE DEFENDANT:  Yes, Your Honor.

22         THE COURT:  All right.  Any other treatment

23  that you are undergoing, sir?

24         THE DEFENDANT:  I do see the psychiatrist

25  once a month to once every three weeks.

12

1    THE COURT:  Anything else?

2    THE DEFENDANT:  No, Your Honor.

3    THE COURT:  Are you treated for anything

4  physical?

5    THE DEFENDANT:  Not at this time, Your Honor,

6  no.

7    THE COURT:  And do you have any conditions,

8  physical, mental or emotional that are not being

9  treated?

10    THE DEFENDANT:  No, Your Honor.

11    THE COURT:  So how would you say your health

12  is generally today?

13    THE DEFENDANT:  I would say today my health

14  is excellent.

15    THE COURT:  And how do you feel right now?

16    THE DEFENDANT:  I am anxious right now, Your

17  Honor, but I believe I prepared myself as well as I can

18  for this day.

19    THE COURT:  I think if you weren't a bit

20  anxious or apprehensive, there would be something

21  really wrong with you or you were on too much

22  medication, but I understand what you are saying.  All

23  right.  Then I think we can continue to proceed.

24    I already told you this, but I want you to

25  understand this explicitly in case I went over it too

13

quickly.  Do you understand you have a right to be

represented by an attorney at every stage of the

proceedings against you?

        THE DEFENDANT:  Yes, I do, Your Honor.

        THE COURT:  And that if you cannot afford the

services of an attorney to take your case to trial, one

would be appointed for that purpose, as well as to

enter a guilty plea, do you understand that?

        THE DEFENDANT:  I do understand, Your Honor.

        THE COURT:  Have you had an ample opportunity

to discuss your case with your counsel?

        THE DEFENDANT:  Yes, Your Honor, I have.

        THE COURT:  Now, I am going to ask you,

because there are two different counsel listed on your

docket sheet, Mr. Neff is one, and Mr. Cedrone is the

other.  Are they both representing you?

        THE DEFENDANT:  Yes, they are, Your Honor.

        THE COURT:  Yes.  And Mr. Cedrone was not

available today, as I recall, when we were trying to

set this up, but Mr. Neff has been representing you in

as much a capacity as Mr. Cedrone?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  So you have discussed your case

with Mr. Neff, as well as Mr. Cedrone?

        THE DEFENDANT:  Yes, Your Honor.

1      THE COURT:  And do you have any questions

2  about your attorneys' representations?

3      THE DEFENDANT:  Not at all, Your Honor.

4      THE COURT:  And that is attorneys', plural,

5  representations?

6      THE DEFENDANT:  No, no, Your Honor.

7      THE COURT:  And are you satisfied with each

8  of their representations?

9      THE DEFENDANT:  Yes, Your Honor, I am.

10      THE COURT:  Thank you.  Did you receive a

11  copy of the information?

12      THE DEFENDANT:  Yes, Your Honor, I did.

13      THE COURT:  And that is the written charge

14  filed by the United States Attorney's Office.

15      THE DEFENDANT:  Yes, Your Honor.

16      THE COURT:  And did you read that

17  information?

18      THE DEFENDANT:  Yes, I did, Your Honor.

19      THE COURT:  Did you review it with your

20  counsel?

21      THE DEFENDANT:  Yes, Your Honor.

22      THE COURT:  Now, this charge is, as I said

23  before, possession of child pornography, one count.

24  It's a violation of 18 United States Code, Section

25  2252(a)(4)(B), and it is based on the knowing

1   possession as alleged, of one or more matters, that is,

2   computers and computer hard drives, that contained

3   approximately two hundred visual depictions that have

4   been shipped and transported in interstate and foreign

5   commerce.

6       These depictions involving the use of minors

7   engaging in sexually explicit conduct and the visual

8   depictions were of minors engaging in sexually explicit

9   conduct.  That is the charge.  Do you understand that?

10      THE DEFENDANT:  Yes, Your Honor.

11      THE COURT:  All right.  Now, we are going to

12  talk about that more in a moment, but do you understand

13  that this charge is brought by the United States

14  Attorney's Office by filing an information?

15      THE DEFENDANT:  Yes, Your Honor, I do.

16      THE COURT:  Do you understand that you have a

17  constitutional right to be charged by an indictment of

18  a grand jury?

19      THE DEFENDANT:  Yes, I do, Your Honor.

20      THE COURT:  But that you can waive that right

21  and consent to be charged by information filed by the

22  United States Attorney?

23      THE DEFENDANT:  Yes, Your Honor.

24      THE COURT:  Do you understand that unless you

25  waive indictment, you may not be charged with a felony

1  which this is, of course, unless a grand jury finds by

2  returning an indictment that there is probable cause to

3  believe that a crime was committed and that you

4  committed it?

5          THE DEFENDANT:  I understand, Your Honor.

6          THE COURT:  Do you understand that if you do

7  not waive the indictment, the government must present

8  this case to the grand jury and request the grand jury

9  indict you?

10         THE DEFENDANT:  Yes, I understand, Your

11  Honor.

12         THE COURT:  Do you understand that a grand

13  jury is composed of at least sixteen people, but not

14  more than twenty-three people, and that before you may

15  be indicted, at least twelve grand jurors must find

16  that there is such probable cause to believe that you

17  committed the crime with which you are charged?

18         THE DEFENDANT:  I understand, Your Honor.

19         THE COURT:  Do you understand if you waive

20  indictment by the grand jury, the case will proceed

21  against you on  the United States Attorney's

22  information, just as if you were indicted?

23         THE DEFENDANT:  Yes, I do, Your Honor.

24         THE COURT:  Now, have you discussed the

25  matter of waiving your right to indictment by grand

17

jury with counsel?

THE DEFENDANT:  I have, Your Honor.

THE COURT:  Now, has anyone from any source made any threats to you or promises to you of any kind to induce you to waive indictment?

THE DEFENDANT:  None whatsoever, Your Honor.

THE COURT:  And with all of this information and knowledge that you have now at present, do you wish to waive your rights to indictment by a grand jury?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  All right.  Counsel, do you see any reason why your client should not waive indictment?

MR. NEFF:  No, Your Honor.

THE COURT:  All right.  Has he executed the form?

MR. NEFF:  He has, Your Honor.  May I approach?

THE COURT:  Yes, please.  Thank you.

(Pause in proceedings.)

THE COURT:  All right.  You signed this form, Mr. Thompson?

THE DEFENDANT:  Yes, I did, Your Honor.

THE COURT:  The form that was handed to me by Mr. Neff.  And you here agree and admit that you have been advised of the nature of the charge and of your

18

rights and waive in open court prosecution by

indictment, consenting that the proceeding may be by

information instead of by indictment, is that correct?

THE DEFENDANT:  Yes, it is correct, Your

Honor.

THE COURT:  And along with you and your

attorney, Ms. Marinari, on behalf of the government,

has also signed and dated today, so I assume this was

signed before we got into court today?

MR. NEFF:  Yes, Your Honor.

MS. MARINARI:  Yes, Your Honor.

THE COURT:  Okay.  Then what we will do is

file your waiver of indictment in the official record

and proceed with the rest of the plea.

Now, I am going to ask Ms. Marinari to please

summarize the terms of the plea agreement.

MS. MARINARI:  Yes, Your Honor.  As the Court

has already noted, the defendant has agreed to plead

guilty to a one count information charging him with

possession of child pornography in violation of 18

United States Code, Section 2252(a)(4)(B).

He has also agreed to pay the special victim

witness assessment in the amount of one hundred dollars

before the time of the sentencing.  He has agreed in

lieu of forfeiture in this case, to abandon to the

19

1  United States approximately four computers, which are

2  listed in paragraph three of the plea agreement.

3        He also waives any claim under the Hyde

4  Amendment for attorneys fees and other litigation

5  expenses arising out of this investigation and

6  prosecution.

7        In return, at the time of sentencing, the

8  government is free to make whatever sentencing

9  recommendation as to imprisonment, fine and restitution

10  that the government deems appropriate.

11        The government is also free to comment on the

12  evidence, the circumstances of the case and bring to

13  the Court all facts relevant to sentencing.  In

14  addition, nothing in the agreement limits the

15  government in its comments or responses to any

16  post-sentencing matters.

17        The defendant has been advised and

18  understands that under the Sex Offender Registration

19  Notification Act, the defendant must register and keep

20  the registration current in each of the following

21  jurisdictions: the location of the defendant's

22  residence; the location of his employment; and if the

23  defendant is a student, which is not the case and will

24  not be necessary, registration will require that the

25  defendant provide information that includes his name,

residence address and the names and addresses of any

places in which the defendant will be employed.

He understands that he must update his

registration no later than three business days after

any change of name, residence, employment or status.

He understands that failure to comply with these

obligations subjects him to prosecution for failure to

register under federal law, 18 United States Code,

Section 2250, which is punishable by a fine or

imprisonment or both.

The defendant understands that he may not

withdraw his plea because the Court declines to follow

any recommendation, motion or stipulation by the

parties to this agreement.  No one has promised or

guaranteed to the defendant what sentence the Court

will impose.

However, pursuant to Section 6(b)1.4 of the

sentencing guidelines, the parties have entered into

certain stipulations regarding the guidelines, and

those are that the parties stipulate and agree that

pursuant to United States Sentencing Guideline Section

2(g)2.2(a)(1), the base offense level for this offense

is 18.

The parties further agree that the base

offense level is increased by two levels because of the

1  material involved, a prepubescent minor who has not

2  attained the age of twelve years.

3  Further, the parties agree the base offense

4  level is increases by four levels, because the material

5  portrays sadistic or masochistic conduct or other

6  depictions of violence.  In addition, the parties agree

7  and stipulate the base offense level is increased by

8  two levels because the offense involved the use of a

9  computer.

10  The parties further agree that the base

11  offense level is decreased by three additional levels,

12  because the offense involved at least one hundred and

13  fifty images, but fewer than three hundred.

14  The defendant also stipulates that he

15  obtained these images using the internet, and that he

16  possessed these images on or about August 14, 2008

17  knowing that they contained such content.

18  The parties further agree that as of the date

19  of this agreement, the defendant has demonstrated

20  acceptance of responsibility for his offense, making

21  him eligible for a two level downward adjustment, as

22  well; that as of the date of this agreement, the

23  defendant has timely notified his intent to plead

24  guilty, thereby permitting the government to avoid

25  preparing for trial, permitting the government and the

22

1    Court to allocate their resources efficiently,

2    resulting in an additional one level downward

3    adjustment.

4         This plea agreement, Your Honor, also

5    contains an appellate waiver section which essentially

6    says, "In exchange for the undertakings made by the

7    government in entering into this plea agreement, the

8    defendant voluntarily and expressly waives all rights

9    to appeal or collaterally attack his conviction,

10   sentence or any other matter relating to the

11   prosecution, whether it is a direct right to appeal or

12   collateral attack under Section 18 United States Code,

13   Sections 3742, 28 U.S.C. Section 1291 or 28 U.S.C. 2255

14   or any other provision.

15        Notwithstanding the waiver provision, if the

16   government appeals from the sentence, then the

17   defendant may file a direct appeal of his sentence.  If

18   the government does not appeal, however, then the

19   defendant may file a direct appeal, but may raise only

20   three matters.

21        First, if the defendant's sentence on any

22   count of conviction exceeds the statutory maximum for

23   that count.  Number two, if the Court erroneously

24   departs upward, pursuant to the sentencing guidelines

25   or three, if the Court, exercising the Court's

23

1  discretion, pursuant to the <u>United States versus</u>

2  <u>Booker</u>, imposes an unreasonable sentence above the

3  final sentencing guideline range determined by the

4  Court.

5          The defendant further waives all rights,

6  whether asserted directly or by a representative, to

7  request or receive from any department or agency of the

8  United States any records pertaining to the

9  investigation or prosecution of this case, including

10  without limitation any records that may be sought under

11  the Freedom of Information Act.

12          Finally, by entering a plea, the defendant

13  waives any and all rights the defendant may have to

14  require DNA testing of any physical evidence in the

15  possession of the government, which in this case is not

16  really applicable.  That is basically a summary, Your

17  Honor.

18          THE COURT:  Thank you.  Now, Mr. Thompson,

19  you were listening carefully.

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Are those the terms of the plea

22  agreement as you understand them to be, essentially?

23          THE DEFENDANT:  Yes, they are, Your Honor.

24          THE COURT:  And did you read the plea

25  agreement that you signed?

24

1          THE DEFENDANT:  Yes, Your Honor, I did.

2          THE COURT:  And did you review that plea

3    agreement with your counsel before you signed it?

4          THE DEFENDANT:  Yes, I did, Your Honor.

5          THE COURT:  And you did sign a plea

6    agreement, because I have a copy of it.

7          MS. MARINARI:  Your Honor, I have the

8    original, if the Court would like it.

9          THE COURT:  Thank you.  I will take it, Ms.

10   Marinari.  Thank you.  And I see that this plea

11   agreement was actually signed back in November?

12         MS. MARINARI:  That is correct, Your Honor.

13         THE COURT:  November of 2009?

14         MR. NEFF:  Yes, Your Honor.

15         THE COURT:  And not only did the defendant

16   sign, but also his attorney, Mr. Neff, as well as Ms.

17   Marinari, and I can't make out the name that signed for

18   the chief of the criminal division.

19         MS. MARINARI:  I'll tell you in one second.

20   Oh, that's Albert Glenn.

21         THE COURT:  Oh, thank you.  Attached to this

22   guilty plea agreement, by the way, is a two page

23   acknowledgment of rights form that you and your

24   attorney also signed.

25         THE DEFENDANT:  Yes, Your Honor.

25

THE COURT:  Did you review that before you signed it?

THE DEFENDANT:  Yes, I did review that.

THE COURT:  Because I will spend some time shortly reviewing the same material that is in the acknowledgment of rights form, all of the rights that you give up when you plead guilty.  But let me ask you this question.  Before you signed this plea agreement, did anyone threaten you, force you or coerce you?

THE DEFENDANT:  No, Your Honor, no one did.

THE COURT:  Did anyone make promises to you, any kind of promises, other than what itself is contained in this agreement?

THE DEFENDANT:  No, Your Honor.

THE COURT:  So there were no outside inducements, no promises, no bargains that are not of record here?

THE DEFENDANT:  No, Your Honor, there were not.

THE COURT:  And what is said in this plea agreement, what is written, and what you signed, is this all that there is for me to know about what you are admitting to?

THE DEFENDANT:  Yes, I believe so, Your Honor.

26

1    THE COURT:  Okay.  Then we are going to file
2  this of record and proceed with the rest of the plea.
3    Now, do you understand that when you plead
4  guilty you give up the right to challenge the
5  information that was returned against you, as well as
6  anything that preceded it in the nature of the
7  investigation or the charges?
8    THE DEFENDANT:  Yes, Your Honor, I
9  understand.
10    THE COURT:  All right.  Do you understand
11  that you are entitled to plead not guilty and proceed
12  to trial?
13    THE DEFENDANT:  I understand, Your Honor.
14    THE COURT:  Do you understand you have a
15  right to be tried by a jury or a judge, without a jury,
16  if you do not plead guilty?
17    THE DEFENDANT:  Yes, Your Honor.
18    THE COURT:  And do you understand that,
19  through your attorney, you can participate in selecting
20  a jury for a trial?
21    THE DEFENDANT:  Yes, Your Honor.
22    THE COURT:  That jury would be composed of
23  twelve persons selected from the community, and all
24  twelve of the jurors would have to agree, that is they
25  must render a unanimous verdict or you  would not be

27

convicted, do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Do you also understand that at trial, you are presumed to be innocent, and it is the government's burden, and only the government's burden to prove your guilt, and they must prove your guilt beyond a reasonable doubt, which is the highest standard of proof in any legal system?  Do you understand that?

THE DEFENDANT:  I do understand, Your Honor.

THE COURT:  And they can only use competent evidence, and you are on the other hand presumed to be innocent, therefore, you need do nothing to prove your own innocence.  That is not your obligation, it is not your burden.  Do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Furthermore, do you understand that during the course of a trial, witnesses for the government must come into the courtroom and testify in your presence?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And you have a right to confront those witnesses by your attorney cross-examining them and objecting to their evidence, do you understand that?

1      THE DEFENDANT:  I understand, Your Honor.

2      THE COURT:  Now, do you also understand that

3  at trial through counsel you may also present witnesses

4  and offer evidence but, again, you are never compelled

5  to do so?

6      THE DEFENDANT:  I understand, Your Honor.

7      THE COURT:  Do you also understand that at

8  trial while you have a right to testify if you choose

9  to do so, you also have an absolute right not to

10  testify, and no inference or suggestion of guilt may

11  be drawn from that fact if you chose not to testify,

12  and I would so instruct the jury?  Do you understand

13  that?

14      THE DEFENDANT:  I understand, Your Honor.

15      THE COURT:  Do you also understand that at

16  trial, you have a right to subpoena, that is, use a

17  court order to compel witnesses to attend court to

18  testify for you?  That's what a subpoena is, it's a

19  court order, and you can use that as well as the

20  government can use that, do you understand that?

21      THE DEFENDANT:  I understand, Your Honor.

22      THE COURT:  And the witnesses that you could

23  produce could also include character witnesses, whose

24  testimony alone could raise -- well, I'm not sure if

25  that is the law anymore that testimony alone could

raise a reasonable doubt.  But character testimony can

be considered, as well as any other evidence to raise a

reasonable doubt, do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  All right.  Do you understand

that when you plead guilty, you give up the right to

challenge the manner in which the government obtained

its evidence that it intends to use to secure your

conviction of guilt?

The kind of evidence I am talking about are

confessions or admissions that you may have made,

surveillance evidence, video evidence, in this case,

the forensic evidence, documents of any kind, printouts

from the computer, the hard drive itself, any

transmissions, anything at all that the government has

acquired in the course of their investigation and

wishes to use as evidence to prove your guilt, once you

plead guilty, you can no longer contest that evidence

being admissible in court, do you understand that?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Do you also understand that at

all times you have an absolute right not to incriminate

yourself?  It isn't just that you have a right not to

testify.  It's also that you can't be forced to, in any

way, incriminate yourself.  Not your lawyer, not the

30

government, not this Court can force you to take the witness stand and give evidence, do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Do you also understand that at all times your attorney argues on your behalf and against the government's case?

THE DEFENDANT:  Yes, Your Honor, I do.

THE COURT:  Now, if you proceeded to trial instead of pleading to an information, and then the information was turned into an indictment by a grand jury, and you proceeded to trial, it is a couple of steps away from where you are now, but if you decided that that is what you wanted to do, and you went to trial, and then you were convicted you would be able to appeal that guilty verdict to the higher court, that is the Third Circuit Court of Appeals, do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Do you understand that you would have an attorney represent you in that appeal, free of charge?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  And that court might reverse your conviction?

1    THE DEFENDANT:  Yes, Your Honor, I

2  understand.

3    THE COURT:  Do you understand that there are

4  limited grounds to appeal from a guilty plea, and those

5  are usually encompassed in the sentence that I would

6  impose, as well as errors in this proceeding or the

7  sentencing proceeding?  Do you understand?

8    THE DEFENDANT:  I understand, Your Honor.

9    THE COURT:  Because there is no appeal from

10  an admission of guilt otherwise, do you understand

11  that?

12    THE DEFENDANT:  I understand, Your Honor.

13    THE COURT:  And there is no appeal from a

14  trial, because you are not having a trial.

15    THE DEFENDANT:  I understand, Your Honor.

16    THE COURT:  All right.  So do you understand

17  then, by pleading guilty, you are giving up your right

18  to appeal from any conviction after trial?

19    THE DEFENDANT:  I do understand, Your Honor.

20    THE COURT:  All right.  But in your case,

21  even with the limitations by giving up your rights to a

22  trial and giving up your right to appeal from the trial

23  verdict and the conviction after trial, do you

24  understand that your plea agreement contains more

25  specific additional waivers and limitations of your

appellate rights?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And those were read to you by Ms. Marinari, and you read them when you signed the plea agreement and reviewed it with Mr. Neff, right?

THE DEFENDANT:  Yes, I did, Your Honor.

THE COURT:  All right.  Let me tell you what you would normally be entitled to if you had not agreed to waive those particular rights.

Normally, you would have a right to appeal any sentence I would impose on you to a higher court, which could then modify your sentence, set aside your sentence or make me resentence you.  The government has that same right of direct appeal.

You would also have a right to bring a later proceeding, and we call that a collateral attack, by filing a habeas corpus motion, and you would file that motion in this court to either vacate, set aside or correct your sentence under normal conditions, do you understand that?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  So your guilty plea today, that is, your guilty plea agreement, greatly limits your rights to appeal or to use a later proceeding like the collateral attack and habeas corpus to challenge your

33

conviction, your sentence or any other matter.

THE DEFENDANT:  Yes, I understand, Your Honor.

THE COURT:  According to your plea agreement, you are voluntarily and expressly waiving all rights to appeal or collaterally attack your conviction, your sentence or any other matter, is that correct?

THE DEFENDANT:  That is correct, Your Honor.

THE COURT:  And other than constitutional claims, which the case law says cannot be waived, you would be limited to four ways to appeal.

One, if the government appeals from my final sentence, then you will have your same right of direct appeal.  But if the government chooses not to appeal, then you are limited to three areas only.

I am repeating them because even though they are in your agreement, even though Ms. Marinari quoted them accurately, I think it is important enough for you to hear it one more time.  Okay?

You can appeal if I sentence you on this count, you have one count in your information, and my sentence exceeds or goes above the statutory maximum for that count.  I hope I don't start making those mistakes after thirty-two years in law.  Okay.  So I don't think you are going to get a chance to use that

34

particular section.

Number two, if I depart upward from the advisory sentencing guideline range, and I do so because I committed a legal error, I made a ruling as a matter of law, and it is incorrect. That could happen.

Or if I sentence you above the advisory guideline range, and I do so because it is an unreasonable sentence, I have made an abuse of my discretion, I have made a mistake in my judgment that impacts not only my right as a trial judge to impose a fair and reasonable sentence, but also because I have violated the premise of the sentencing statute, that is, 18 United States Code, Section 3553, which tells a judge how to sentence, and shows us which factors we are supposed to consider.

Now, one of those factors is the advisory sentencing guideline range. We must consider it. I have to compute it. I have to do it accurately or I commit that legal error, but then I have to use that information. It doesn't mean I have to adopt it as the sentence, but I must recognize it and use it as a piece of advice.

I also have other pieces of advice and information that I must use. One of them is your

35

personal history and background, your personal
characteristics.  The other is the case itself and its
serious nature.  Of course, this is serious or you
wouldn't be here, and it is very serious in any event.

And I have to recognize the effect on the
community, the public and others.  I also have to
consider how your rehabilitation or correctional
treatment, if any, is necessitated and implemented.  I
must consider how to promote respect for the law and
deter this kind of crime.

So there are many considerations that I have
that are clearly outlined in the Sentencing Statute.
To put them all together, if I impose a sentence after
I do that and it is above the advisory guideline range,
then it may be an unreasonable exercise, and you may
then appeal.  All right?

THE DEFENDANT:  Yes, I understand, Your
Honor.

THE COURT:  Now, other than that, you waive
all other rights to appeal, do you understand that?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Okay.  Now, if you plead guilty,
and I accept your plea, do you understand that you will
waive, and by that you give up the right forever to
have a trial of any kind in this matter, as well as the

36

other rights we have been discussing?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  And if you plead guilty, do you understand that I will ask you questions about what you specifically did in order to satisfy myself that you are guilty as charged?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you plead guilty today, I will then enter a judgment of guilt and sentence you at a later date, and I will sentence you in accordance with the sentencing statute, as I just explained to you.

But when I have to consult the sentencing guidelines, I will do so only after a presentence report has been prepared by a member of the United States Probation Department.

They will put together all of this information that I rely on.  You can add to that.  You cooperate and participate in that process, so does the government.  But if you have more information to present at sentencing, I certainly will listen to it.

But I never compute guidelines until that report is ready, and you and the government have had an opportunity to make corrections, deletions, modifications, additions to the information that is contained in it.

1    If it is not changed to your satisfaction or

2  the government's, each of the parties is entitled to

3  pose objections, which I must rule upon before I decide

4  what the advisory guideline range is, do you understand

5  that?

6    THE DEFENDANT:  I understand, Your Honor.

7    THE COURT:  So much has to be done before I

8  can even contemplate what kind of a sentence you would

9  be receiving.  And as far as I can see, there is no

10  agreement, no term of this guilty plea agreement that

11  recommends any particular sentence, is that correct?

12    THE DEFENDANT:  That is what I understand,

13  Your Honor, yes.

14    THE COURT:  And as far as I can tell, there

15  are no promises either being made to you as to what

16  sentence you will receive?

17    THE DEFENDANT:  That is true, Your Honor.

18    THE COURT:  So without an expectation of a

19  specific sentence or even a recommendation for a

20  sentence, because I don't see one here in the plea

21  agreement, and certainly no promise of one, if I

22  sentence you, and it is otherwise a legal sentence, you

23  will not be able to withdraw your plea because you

24  thought that you were entitled to or promised some

25  other type of sentence or some other sentence, do you

38

1  understand that?

2          THE DEFENDANT:  I understand that, Your

3  Honor.

4          THE COURT:  All right.  Now, I take it by a

5  plea to an information, that you have no prior record?

6          THE DEFENDANT:  That is correct, Your Honor.

7          THE COURT:  So we don't have to worry about a

8  prior sentence being violated here, do we, Counsel?

9          MR. NEFF:  No, Your Honor.

10          THE COURT:  All right.  And I am pretty sure,

11 but I will ask anyway, are you a citizen of the United

12 States?

13          THE DEFENDANT:  Yes, I am, Your Honor.

14          THE COURT:  Very well.  So there are no

15 deportation issues either.

16          Now, I am going to turn back to the

17 government and ask Ms. Marinari to please define this

18 crime that you are pleading guilty to and establish the

19 definition by its essential elements, which if you went

20 to trial, Mr. Thompson, the government would have to

21 prove beyond a reasonable doubt to a judge or a jury

22 before you would be convicted.

23          MS. MARINARI:  Your Honor, in order to

24 establish this crime of possession of child

25 pornography, the government must prove the following

1    four elements.

2         First, that the defendant knowingly possessed

3    one or more books, magazines, periodicals, films,

4    videotapes or other matter which the defendant knew

5    contained a visual depiction of a minor engaged in

6    sexually explicit conduct.

7         Secondly, that the defendant knew the visual

8    depiction contained in the videotape or other matter

9    was of a minor engaged in sexually explicit conduct.

10        And thirdly, the defendant knew that

11   production of such a visual depiction involved use of

12   the minor in sexually explicit conduct.

13        And lastly, the visual depiction had been

14   either mailed, shipped or transported in interstate or

15   foreign commerce, or was produced using material that

16   had been mailed, shipped or transported in interstate

17   or foreign commerce by a computer or other means.

18        THE COURT:  Thank you.

19        MS. MARINARI:  You're welcome.

20        THE COURT:  Do you understand the definition

21   of the crime to which you are pleading guilty, sir?

22        THE DEFENDANT:  Yes, I do, Your Honor.

23        THE COURT:  All right.  Now, Ms. Marinari,

24   would you also state the penalties that he faces?

25        MS. MARINARI:  Certainly, Your Honor.

1          THE COURT:  Thank you.

2          MS. MARINARI:  This crime carries the

3    following maximum sentence.  Up to ten years

4    imprisonment, five years up to a lifetime of supervised

5    release, a two hundred fifty thousand dollar fine, a

6    one hundred dollar special assessment.

7          In addition, the Court must order all

8    property used or intended to be used to commit or

9    promote this offense and all images possessed in

10   connection with this matter to be forfeited.  In this

11   case, Your Honor, the defendant has agreed to forfeit.

12         THE COURT:  Do you understand the sentence

13   that you are facing?

14         THE DEFENDANT:  Yes, I do, Your Honor.

15         THE COURT:  All right.  And I think it is

16   important for you to understand supervised release,

17   because when a jail term may be imposed and it is of

18   sufficient consequence, it must be followed by

19   supervised release, which is while it sounds like it

20   may be like probation or parole, it is neither.

21         It is supervised release in the federal

22   system, and it comes with terms and conditions of

23   behavior that must be followed.  There are rules that

24   dictate to you all of the conditions that you must

25   comply with.

1          If there are violations of those conditions,

2     Mr. Thompson, you face coming back into court.  If you

3     are found to be in violation of those conditions, some

4     of which are standard conditions that everyone in the

5     Eastern District of PA is assessed and others that are

6     special, and you will have certainly some special

7     conditions in your case, if you are found to be in

8     violation of the terms of your supervised release, you

9     could be sentenced to an additional term of prison.

10         So in your case, this is a Class B -- is it a

11    Class B or Class A?

12         MS. MARINARI:  Ten years, Judge.  I think

13    this was a Class C.

14         THE COURT:  And a Class C would mean that in

15    supervised release, he is facing -- I don't think that

16    is in the plea agreement, is it?

17         MS. MARINARI:  Yes, Your Honor, it is in the

18    plea agreement.

19         THE COURT:  It is?

20         MS. MARINARI:  And I think because it is

21    child pornography, that it is a special term of

22    supervised release.  It is at least five years up to

23    a lifetime, and I believe that is in the plea

24    agreement.

25         THE COURT:  It is on page three, you are

42

absolutely right.  On page three of your plea agreement
in paragraph six, it stipulates here that you
understand that supervised release may be revoked if
its terms and conditions are violated.  And when it is
so revoked, the original term of imprisonment may be
increased by two years per count of conviction, so in
your case, two years.

        If you commit a specified child exploitation
offense while on supervised release, an additional
period of imprisonment shall be imposed of at least
five years.

        THE DEFENDANT:  Okay.

        THE COURT:  And that is what is different
about this kind of crime when you are on supervised
release, do you understand that?

        THE DEFENDANT:  I understand, Your Honor.

        THE COURT:  That was well worth repeating for
all of our sakes.  All right.

        Now, Ms. Marinari, on behalf of the
government, would you please summarize the facts upon
which this plea is based?

        MS. MARINARI:  Yes, Your Honor.  Your Honor,
this case was initiated back on August 17th, 2006.  FBI
Special Agent Steve Forrest in Buffalo conducted an
undercover investigation utilizing the America On Line,

1   and he was investigating individuals involved in the

2   transmission and receipt of child pornography.

3        On that date he located and entered a chat

4   room entitled, "Special Interest, Fathers Chatting."

5   Special Agent Forrest sent a message to the chat room

6   indicating that he had videos to trade.

7        Special Agent Forrest received an instant

8   message from an individual using the AOL screen name,

9   HJIMBOB1.  The two discussed the trading of images of

10  children engaged in sexual activity.  During the online

11  contact, HJIMBOB1 stated he was a forty-six year old

12  male, that he had been married for twenty-three years,

13  and that he had a sixteen year old son.

14       Special Agent Forrest received three movie

15  files via e-mail from this individual.  The movies

16  contained minors engaging in sexual activity with adult

17  males.  By subpoena, Special Agent Forrest obtained the

18  AOL account of HJIMBOB1, and identified that subscriber

19  as an individual identified here as J.H. from Ohio.

20       On October 4, 2006, a court authorized search

21  warrant was executed at J.H.'s residence, and multiple

22  items were seized, including three computers and

23  multiple compact disks and floppy disks.  Later, J.H.

24  was interviewed and admitted to trading child

25  pornography, including pictures and movies.

44

He explained he would enter the chat room and either initiate a request or answer another user's request to trade.  He used AOL Instant Messenger to communicate with other users interested in child pornography, and then he would e-mail back and forth pictures or movies with these other users.

The FBI's review of e-mail messages from J.H.'s AOL account showed that on September 24th, 2006, J.H. received an e-mail from TUNALIC@aol.com, with the subject line, "Re: Check out super child models for a rainy day."  There were two photos attached to this e-mail considered to be child erotica.

On November 20, 2006, agents issued a subpoena to AOL for subscriber information for that screen name, TUNALIC.  The records show that the account was registered to the defendant, Robert Thompson, at 6184 Putner Drive, Allentown, listing his telephone number.

On July 12, 2007, the FBI received additional information from the Cincinnati FBI office which provided a CD-ROM of additional evidence of the trading of child pornography between J.H. and TUNALIC, identified as the screen name for the defendant.

Agent Simon received the CD and found that on September 4th, 2006, between 1:15 and 11:51 a.m.,

45

e-mails had been sent from TUNALIC@AOL.com to HJIMBOB1@AOL.com.

Each e-mail contained child pornography. Seven of the eight attached photos depicted minor females between seven and twelve years old, with their unclothed vaginal area exposed in various posed positions.  One of the photos depicted a minor wearing only underwear posed on a bed.

On July 27th, 2007, Agent Simon received additional information from the FBI's office in Martinsburg, West Virginia regarding another AOL account, M4TSUMTHIN.

Included was a copy of an e-mail dated March 1, 2003, with an attached print copy of file, "Brothers playtime.art", sent from MEBICD to M4TSUMTHIN and others.  These images have been previously identified as belonging to the known child pornography series "Kate DV" from the Moscow City Police Department.

The agent issued a subpoena to AOL for subscriber information for this screen name, M4TSUMTHIN.  The records show the account was registered to the defendant, Robert Thompson, in Allentown.

Subsequent to obtaining that information, Your Honor, in August of 2008, FBI Agent Simon left a

1  business card requesting that the defendant call him.

2  An interview was scheduled for August 14th, and on that

3  date the defendant was interviewed at his residence by

4  Agent Simon.

5      After an initial denial, the defendant

6  admitted to the possession and dissemination of images

7  of children engaged in sexually explicit conduct via

8  the internet.  He specifically admitted using computers

9  and the internet to collect, view and disseminate

10 hundreds of images of child pornography.

11     He said that he was the sole user of three

12 AOL e-mail accounts, including TUNALIC, as well as

13 M4TSUMTHIN.  The defendant describes his activity as an

14 AOL addiction that began as an interest in viewing

15 adult pornography, but changed to child pornography

16 within the last five to ten years.

17     He confirmed that he had a sexual interest in

18 females thirteen years old and older, with his

19 preference being females in the thirteen to fourteen

20 year old range.

21     He stated he engaged in this activity late at

22 night and on weekends, and after logging into AOL, he

23 went to the site, "Member-sponsored sites" and then to

24 "Special Interests," where there were many different

25 subcategories that he could choose.

47

Once in the chat room, he engaged in dialogues to find other traders, then communicated directly with them via AIM and then sent and received images through AOL e-mail.

He stated that he would store the images in hidden folders on his computer.  He estimated he may have received and saved about two hundred images of child pornography, but had not done so since December of 2007.

During this interview, the agents were given consent by the defendant to search his computers.  He led the agents to two Dell desk top computers located in his residence.

When Agent Simon attempted to conduct a preliminary examination and ran the FBI pre-search software on the desk top computer, he found a disk labeled "Drug Drive Scribe Scrubber" inside the DVD-ROM drive.

Defendant admitted that after he became aware that the FBI wanted to speak with him, he went to Best Buy and purchased the Drive Scrubber disk for twenty-nine dollars.  He said he used the scrubbing software on both Dell desk top computers.

When questioned further about any other evidence he may have hidden, the defendant admitted to

1  the existence of two other computers.  He stated that

2  he had placed a suitcase in his neighbor's garage.  The

3  suitcase contained a Dell laptop computer and a Dell

4  desk top computer.

5      He agreed to retrieve the suitcase and

6  eventually did that and gave them to Agent Simon.  He

7  said he did not use the Drive Scrubber on these

8  computers.  He also gave the FBI one external hard

9  drive and a 1.44 floppy disk.

10      Upon examination of the defendant's computers

11  after they were provided to the FBI, Agent Simon found

12  at least two hundred images depicting child pornography

13  and, in particular, approximately forty depicted

14  intercourse prepubescent, and approximately eight

15  depicted intercourse pubescent.  Approximately four

16  depicted masturbation prepubescent.  Approximately

17  three depicted masturbation pubescent.

18      Approximately eight depicted children engaged

19  in sadomasochistic conduct.  And lastly, approximately

20  sixty-five showed lascivious exhibition prepubescent,

21  and approximately  ninety-nine showed lascivious

22  exhibition pubescent.

23      All of these images have been distributed in

24  interstate or foreign commerce and/or the materials

25  used to create the images have been shipped in

1  interstate or foreign commerce.  That's the summary,

2  Your Honor.

3          THE COURT:  Thank you.  Was the search

4  conducted on August 14th or thereabouts of 2008?

5          MS. MARINARI:  Your Honor, the search was

6  conducted later than that date.

7          THE COURT:  I am just trying to make some

8  sense of the statement that he initially gave Agent

9  Simon that he hadn't received images since 2007 of

10  December, but there were two that had not been

11  scrubbed, right, two computers?

12          MS. MARINARI:  That is correct, Your Honor,

13  and we did get those.

14          THE COURT:  He was still in possession of

15  them then on the date that is charged in the

16  information?

17          MS. MARINARI:  No, Your Honor.  All of the

18  computers were taken on that day, August 14th, back in

19  2008 from the defendant.

20          THE COURT:  Okay.

21          MS. MARINARI:  It was subsequent to that,

22  within approximately two months of that, that the

23  analysis was conducted.  There is somewhat of a backlog

24  in terms of these analyses being done.

25          THE COURT:  That doesn't bother me.  I just

1  wanted to know when they were preserved, because that

2  is the date.

3         MS. MARINARI:  They were taken at that time,

4  Your Honor.

5         THE COURT:  Okay.  August 14, 2008 makes

6  sense to me now.  All right.  Then I am going to turn

7  to you, Mr. Thompson, and ask you, that was a detailed

8  summary, but it is necessary in this case, and I wanted

9  to know if you agreed that the government has

10  accurately summarized the facts of your case?

11         THE DEFENDANT:  Yes, they have, Your Honor.

12         THE COURT:  And do you agree and admit to

13  committing the acts that I was just told?

14         THE DEFENDANT:  Yes, Your Honor.

15         THE COURT:  And then do you agree that you

16  are guilty of this offense?

17         THE DEFENDANT:  I do, Your Honor.

18         THE COURT:  I told you I would ask you

19  questions, but there is something that I have to ask

20  you now, instead of waiting until sentencing.  You said

21  you had stopped receiving and saving images of child

22  pornography December, 2007?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Why?

25         THE DEFENDANT:  My AOL account ended in

51

December of 2007, and it was through AOL that all of this actually occurred, and I didn't get any other of those types of services.  I didn't want any more social kind of stuff like that where chat rooms would be available.

THE COURT:  So you had no more internet access?

THE DEFENDANT:  I still had the internet, but I didn't have any access to chat rooms.

THE COURT:  There is no access to chat rooms on other services?  AOL is the only one that you can do chat rooms?

THE DEFENDANT:  Well, I didn't go looking, Your Honor.  I was only familiar with AOL, and after my AOL account ended in December, I was in a way relieved, but I didn't go looking for any other chat rooms at that point.

THE COURT:  Okay.  Now, I don't know that there is a named victim in this type of prosecution that needs to be notified?

MS. MARINARI:  Your Honor, that is actually handled through both the FBI and my office.  So that is something that would be reviewed.  At the moment, I don't know of any, but I will be advised of that prior, and I will advise the probation office.

1    THE COURT:  All right.  Thank you.  If there

2 were particular named victims, they would be invited to

3 participate in the sentencing phase here by

4 transmitting to the Court or by appearing themselves

5 any position they may have as to impact on themselves

6 or how they feel about sentencing.

7    Now, the Court is not compelled to listen to

8 them or adopt their views, and their views may not

9 agree with the government's position.  The government

10 doesn't need to adopt their views, but we all listen in

11 the sense that they are invited to participate and

12 express themselves, and also if they don't care to do

13 that, observe.  Do you understand that?

14    THE DEFENDANT:  I understand that, Your

15 Honor.

16    THE COURT:  All right.  So have you then

17 discussed with your attorneys the charge, your right to

18 contest this charge, as well as the penalties that you

19 face?

20    THE DEFENDANT:  Yes, I have, Your Honor.

21    THE COURT:  Do you understand that by

22 pleading guilty and by waiving the rights we have been

23 discussing, you cannot later come to this or any court

24 and claim that your rights were violated or that you

25 are not guilty?

1    THE DEFENDANT:  I understand, Your Honor.

2    THE COURT:  Did anyone threaten you, coerce

3  you or force you in any way to plead guilty today?

4    THE DEFENDANT:  No, Your Honor.

5    THE COURT:  Has any other consideration or

6  plea agreement been entered in this case, other than

7  what is already stated in your written guilty plea

8  agreement and here on this record?

9    THE DEFENDANT:  No, Your Honor.

10    THE COURT:  Then has your decision to enter

11  this plea of guilty been made of your own free will?

12    THE DEFENDANT:  It has, Your Honor.

13    THE COURT:  Having heard from me what your

14  rights are if you plead not guilty and go to trial, and

15  what may occur if you plead guilty and proceed to

16  sentencing at a later date, do you still wish to give

17  up your rights to a trial and plead guilty?

18    THE DEFENDANT:  I do, Your Honor.

19    THE COURT:  And do either counsel have any

20  doubt as to Mr. Thompson's competence to enter this

21  plea?

22    MR. NEFF:  No, Your Honor.

23    MS. MARINARI:  I have no doubt, Your Honor.

24    THE COURT:  And are each counsel satisfied

25  that his willingness to plead guilty is voluntary and

1   his guilty plea is made with his full understanding of

2   the nature of the charge, the maximum possible

3   penalties and his legal rights to contest this charge?

4          MR. NEFF:  I am satisfied, Your Honor.

5          MS. MARINARI:  Yes, I am satisfied.

6          THE COURT:  And are each attorney satisfied

7   that his plea is not based on any plea agreement or

8   term except as disclosed on this record?

9          MR. NEFF:  Yes, Your Honor.

10         MS. MARINARI:  Yes, Your Honor, I am

11  satisfied.

12         THE COURT:  And are each counsel satisfied

13  that there is a sufficient factual basis to support the

14  elements of the offense in this plea?

15         MR. NEFF:  There is, Your Honor.

16         MS. MARINARI:  Yes, Your Honor.

17         THE COURT:  Then I will ask counsel, do you

18  have any additional questions to pose?

19         MR. NEFF:  None from the defense, Your Honor.

20         MS. MARINARI:  I have no additional

21  questions, Your Honor.

22         THE COURT:  Thank you.  Mr. Thompson, you

23  will have an opportunity to address this Court at the

24  time of sentence, but you also have an opportunity to

25  address the Court today, if you so wish.  Would you

55

1  like to say anything, sir?

2          THE DEFENDANT:  Well, Your Honor, I wasn't

3  prepared to say anything today.

4          THE COURT:  Well, you are not forced to,

5  either.

6          THE DEFENDANT:  I might better wait, I think.

7          THE COURT:  Good, then you can prepare

8  something.

9          THE DEFENDANT:  There is a lot I would like

10 to say, but I had better wait.  Thank you for the

11 opportunity.

12         THE COURT:  You are welcome.  We will then

13 make the necessary finding on this record.

14         We do find that Mr. Thompson's waiver of

15 indictment is knowing, intelligent and voluntary, and

16 we accept his waiver, and we find then that he is

17 knowingly, intelligently and voluntarily waiving his

18 right to indictment by grand jury.

19         And I am going to ask you to rise.  My clerk

20 will take your plea.

21         COURTROOM DEPUTY:  Under Criminal Docket

22 Number 2009-797, you have been charged with possession

23 of child pornography under 18 U.S.C. Section

24 2252(a)(4)(B), how do you plead, guilty or not guilty?

25         THE DEFENDANT:  I plead guilty.

1          THE COURT:  Thank you.  Now, please be seated

2    one more time, and I will enter my final findings that

3    are necessary for me to actually accept any plea.  In

4    this case, I do find the defendant competent and fully

5    capable of entering an informed plea to the charge in

6    the information.

7          We also find that his plea of guilty is

8    knowing and voluntary, is not based on force or threats

9    of any kind, nor is it based on any promises except

10   those explicitly stated in his written plea agreement,

11   and that has been disclosed on this record.

12         We further find that there is an independent

13   factual basis to support each of the essential elements

14   of the offense to which he is entering this plea, and

15   that he understands what his charge is, he understands

16   his legal rights to contest that charge, and he

17   understands the maximum possible penalties that he

18   faces.  There are no mandatory minimum penalties

19   implicated here?

20         MR. NEFF:  There are not, Your Honor.

21         MS. MARINARI:  No, Your Honor.

22         THE COURT:  We further find that Mr. Thompson

23   understands he is waiving his right to a trial, as well

24   as limiting his right to appeal, and this Court accepts

25   his plea of guilty to the information, and will order

the presentence report be prepared by the probation

department.

I think it is necessary to complete the

arraignment process.  He has been notified of his

charges and his rights, and he has then had his plea to

an information accepted by accepting his waiver of

indictment.  So we are through all the processes except

for two, to set the sentencing date and to arrange for

release status.  So we need to do that.

Let's address that now.  I have a report from

the United States Pretrial Services, which I received

by fax and then in hard copy.  Have you all reviewed

that?

MR. NEFF:  Yes, Your Honor.

MS. MARINARI:  Yes, Your Honor.

THE COURT:  All right.  Is there any position

that the government has as to his release that they

would like to identify for the Court at this time?

MS. MARINARI:  No, Your Honor.  I am

satisfied based on the conduct in this case and what

has occurred prior to even the filing of the charges.

At this point, we are recommending fifty thousand

dollars OR bail to the Court with conditions.

THE COURT:  All right.  And one of those

conditions should be that he relinquish his passport.

1    MR. NEFF:  He has that with him, Your Honor,

2  and it will be done today.

3    THE COURT:  All right.

4    MS. MARINARI:  We are also recommending, Your

5  Honor, that he report to Pretrial, as they direct him

6  to do, and that his travel is restricted.  In this

7  case, I know it was initially the Eastern District, but

8  Mr. Neff brought to my attention that he has, I

9  believe, a relative in the Middle District, so that it

10  would be extended to the Eastern and the Middle

11  District of Pennsylvania.

12    MR. NEFF:  He cares for his mother who is

13  eighty-nine, Your Honor.

14    THE COURT:  Very well.

15    MS. MARINARI:  Obviously, Your Honor, we

16  would ask him to surrender and not obtain any

17  additional firearms, if he has any, as well, Your

18  Honor, that he refrain from any contact with minors

19  other than family members, unless supervised with other

20  adults present, and as well that he refrain from

21  computer usage, and that he allow the FBI, if they deem

22  necessary, access to those computers in his household.

23    THE COURT:  Any disagreement with any of

24  these conditions, Mr. Neff?

25    MR. NEFF:  None, Your Honor.

59

THE COURT:  The no computer usage, I have to sign on to, even though the latest Third Circuit decisions, I think, a blanket disallowance of computer usage is not appropriate in the long-term, this is the short-term.

MR. NEFF:  Understood, Your Honor.

THE COURT:  We're pretrial here in terms of presentence, and it is permitted, and I am going to bar any computer usage for now.

MR. NEFF:  Yes, Your Honor.

THE COURT:  We need to know a lot more about Mr. Thompson before we consider how to properly implement a controlled computer usage or not at all, and so I think that he should surrender his passport today.

I will restrict his travel to the Eastern District of Pennsylvania and to the Middle District, but only to care for his aging mother.  And any other travel must receive approval and advance permission by the Pretrial Services department, and he must surrender any firearms and not obtain any.

You should be advised that once you are sentenced, you will be a convicted felon and not able to obtain any firearms or possess them, not legally, and we know that you will not even consider that.

60

We will also order that the FBI may continue to monitor any computers owned within his household. Do you have any at home?

THE DEFENDANT: Yes, Your Honor, we do. My wife needs one for her work, and my son's schoolwork is oftentimes computer-based.

THE COURT: And how old is your son?

THE DEFENDANT: Eighteen.

THE COURT: Okay. Then what we are doing is keeping you off of it and allowing the FBI access to make sure you are off.

THE DEFENDANT: And, Your Honor, just to clarify, we don't have the internet in our house now. We just have computers for word processing or that sort of thing.

THE COURT: And I am sure they would be happy once they accessed it to find out that that is still the case.

THE DEFENDANT: Yes.

THE COURT: And the part with no contact with minors unless supervised with other adults present, your son is eighteen. He is not considered a minor.

THE DEFENDANT: Correct.

THE COURT: Right?

THE DEFENDANT: Yes, Your Honor.

61

THE COURT:  Any other children around?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Nearby relatives, friends, neighbors?

THE DEFENDANT:  Neighbors.  There are children in the neighborhood, Your Honor.

THE COURT:  Well, you won't be able to baby sit.

THE DEFENDANT:  I have been cognizant of the issues and have really tried to distance myself from anything that might have any inappropriate appearance.

THE COURT:  You don't coach little league or soccer, do you, or anything of that nature?

THE DEFENDANT:  Not anymore, Your Honor.

THE COURT:  Okay.  Well, none of that will happen while you are on my watch in any event.

THE DEFENDANT:  I understand.

THE COURT:  So maintain no contact with minors, and that includes organized community activities.  We will then release you on the recommendation of Pretrial and with the agreement of the government on your own recognizance.

Fifty thousand dollars is the surety, and that means if you do violate, you will forfeit fifty thousand dollars.  That's what that means.  But you are

62

1    released on your own recognizance, subject to these

2    conditions, as soon as you turn over your passport.

3            THE DEFENDANT:  I understand, Your Honor.

4            THE COURT:  All right.  I don't know that

5    there is anything else.  Do we have a date for his

6    sentencing in April?  How about that last week of

7    April, like we were scheduling somebody else the other

8    day?

9            (Discussion off the record.)

10           THE COURT:  I think we can do this at 2:00 on

11   April 23rd.

12           MR. NEFF:  Your Honor, if I may, I will be

13   away from the 16th through the 23rd.  I think we

14   actually come back either the evening of the 23rd or on

15   the 24th.

16           THE COURT:  All right.

17           MR. NEFF:  My wife is planning my fiftieth,

18   Your Honor, so it has been in my book for awhile.

19           THE COURT:  We don't wish to interfere with

20   that.  How are you both on the 27th?  That's a Tuesday.

21           MR. NEFF:  That's clear on my calendar, Your

22   Honor.

23           MS. MARINARI:  Yes, Your Honor.

24           THE COURT:  Let's do 10:00 a.m.

25           MR. NEFF:  Thank you, Your Honor.

63

1       THE COURT:  Sure.

2       MR. NEFF:  My wife will be pleased to know I

3  can attend the celebration.

4       (Pause in proceedings.)

5       THE COURT:  We have a Mr. Thompson the day

6  before as well, with two years difference in their case

7  numbers.

8       Okay.  Anything else, Counsel?

9       MS. MARINARI:  No, Your Honor.  Thank you.

10      MR. NEFF:  No, Your Honor.  Thank you very

11  much.

12      THE COURT:  We'll stand in quick recess until

13  our next session.

14      (Proceedings concluded, 3:17 p.m.)

15              * * *

16

17

18

19

20

21

22

23

24

25

1
2
3
4
5
6
#### CERTIFICATION
7
8      I, Jeff Nathanson, do hereby certify that the
9 foregoing is a true and correct transcript from the
10 electronic sound recordings of the proceedings in the
11 above-captioned matter.
12
13
14 __3-26-18__
15 Date                               Jeff Nathanson
16
17
18
19
20
21
22
23
24
25